UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
JERMAINE DAWSON,

                Petitioner,                     **05 CV 1355 (NG)(LB)**

- against -                                        **OPINION & ORDER**

WILLIAM PHILLIPS, Superintendent
of Green Haven Correctional Facility,

                Respondent.
-------------------------------------------------------x

**GERSHON, United States District Judge:**

      Petitioner Jermaine Dawson petitions the court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. My April 15, 2005 Order directed petitioner to show cause by affirmation why the statute of limitations should not bar his petition. On June 15, 2005, petitioner filed an affirmation in response arguing for the application of equitable tolling of the statute of limitations. By Order of July 26, 2005, Magistrate Judge Lois Bloom directed respondent to file a limited answer to the petition, addressing the issue of timeliness. On August 25, 2005, the State filed an affidavit in opposition to the petition which asserts that the petition is untimely pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244. For the reasons discussed below, the petition is now dismissed as time-barred.

**BACKGROUND**

      Petitioner was convicted, after a jury trial, of Murder in the Second Degree (N.Y. P.L. § 125.25[3]) and Robbery in the First Degree (N.Y. P.L. § 160.15[2]), and sentenced on August 6, 1998 to concurrent terms of twenty-five years to life imprisonment for his murder conviction and

1

twelve and one half to twenty-five years for his robbery conviction. Petitioner appealed his conviction to the New York Supreme Court, Appellate Division, Second Department. The Appellate Division affirmed petitioner's conviction on January 8, 2001. *People v. Dawson*, 279 A.D.2d 477 (2d Dep't 2001). On February 22, 2001, petitioner's application for leave to appeal to the New York Court of Appeals was denied. *People v. Dawson*, 96 N.Y.2d 758 (2001). On January 13, 2003, petitioner wrote a letter of the Clerk of Court for the Eastern District of New York, expressing frustration with his attorney and requesting "an extension to pursue [his] federal habeas corpus" petition. The Clerk of Court responded in a January 21, 2003 letter, explaining that the Clerk had no power to grant such an extension and that petitioner could obtain relief only by filing a complaint or a habeas corpus petition — a form for filing a petition under 28 U.S.C. § 2254 was enclosed. On January 31, 2005, petitioner filed the instant petition, arguing that: (1) the trial court committed reversible error when it refused to allow petitioner to testify as to certain information within his knowledge; (2) the prosecution's summation deprived petitioner of a fair trial; (3) petitioner's sentence was excessive and illegal; and (4) his right to a full and fair trial was violated when the trial court allowed questioning regarding his uncharged prior crimes.

Petitioner claims that his attempts to file a habeas petition were frustrated by his attorney's incompetence. Petitioner wrote to the attorney who had represented him at trial in December of 2001 to inquire as to the status of his habeas corpus petition.[1] The attorney's paralegal wrote back to petitioner on December 13, 2001, that "the main reason for this letter is to inform you that, I am currently working with [your attorney] as a paralegal, and he wants me to assist you in the

---

[1] Petitioner submits copies of a number of letters to and from his attorney. The authenticity of these letters has not been confirmed but they are taken as authentic for the purposes of this Opinion. Petitioner's submissions to this court further raise a question as to whether an attorney-client relationship was actually formed, but for the purposes of this Opinion it is assumed that such a relationship existed.

preparation of your habeas corpus pursuant to 28 USC 2254." Paralegal's Letter of Dec. 13, 2001, Exh. A to Petitioner's Affirmation. On December 20, 2001, petitioner responded to the paralegal, noting that he only wanted to raise the issues raised in his direct appeal briefs. Dawson Letter of Dec. 20, 2001, Exh. B to Petitioner's Affirmation. On February 18, 2002 and March 21, 2002, petitioner wrote additional letters to the paralegal asking "to be informed as to the current status of your preparation of my petition." Exh. B to Petitioner's Affirmation. Having received no response, petitioner wrote to his attorney on April 29, 2002, requesting a status report. Dawson Letter of Apr. 29, 2002, Exh. C to Petitioner's Affirmation. On May 20, 2002, petitioner wrote a letter to his attorney which stated "I was looking forward to a response to my last letter, but, you haven't wrote back . . . . The deadline in which to file my federal habeas corpus is within this week. I am writing to ask you to send me a copy of the petition". Exh. C to Petitioner's Affirmation. Additional letters were sent in July, September, and November of 2002, all requesting a status report and all apparently unanswered. *See id.* Petitioner's November 25, 2002 letter stated "I am very disturbed by the fact that you have refused to answer my letters, and leave me uninformed in such an important matter. It has been about 7 months since the deadline in which to submit my petition has past . . ." Dawson Letter of November 25, 2002, Exh. C to Petitioner's Affirmation. As described in the preceding paragraph, petitioner corresponded with the Clerk of Court in early 2003. Subsequent to this communication, petitioner wrote another letter to his attorney stating that he wished to complete his own petition but that he could not do so "without the legal material that I sent you, and I ask that you please return my legal documents immediately." Dawson Letter of January 27, 2003, Exh. H to Petitioner's Affirmation. In response petitioner's attorney wrote petitioner a hand-scrawled letter, on his firm's letterhead, which stated "Dear Maine, Got your letter. Don't worry about the minutes

3

I promise you will get them. It might take a while but you will get them." Exh. H to Petitioner's Affirmation. The letter also alluded to strategy and personal matters. *See id.* Petitioner also submits a second, undated letter from his attorney in which he again promised petitioner that he would "get your paperwork" and indicated that "it is in a garage in Jersey." Exh. H to Petitioner's Affirmation. In March of 2003, the paralegal sent petitioner an additional letters which stated:

> Shortly after your legal papers were received in [the attorney's] office, I lost three family members to death (one after the other), and had to traveled back and forth outside the United States for an extensive period of time. When your legal papers were received, you was already close to the one-year limitation period for filing your federal habeas. At the time, even if I had stated working on your habeas, I would have had to petition the court for an extension of time to perfect the habeas. In any event, there is a recent decision (Clay v. United States __ S.Ct.___,) from U.S. Supreme Court addressing something to that effect . . . . Thank you for your time and attention in this matter, and I look forward to your prompt reply via-Sam. In other words, in response to this letter, address your letter directly to [your attorney's] law office ok.

Letter of Mar. 7, 2003, Exh. I to Petitioner's Affirmation. From March of 2003 through April of 2004, petitioner sent several additional letter to his attorney, which apparently received no response. Exh. J to Petitioner's Affirmation. The last letter, written on April 7, 2004, is generally indicative of the tone of all of the letters. It reads:

> You should know that this is regarding my legal documents because I have been writing you about my legal papers for a might long time, but to no avail. I can't help but write you begging for my papers because I need them from you badly. So, please do send my documents back to me at this time.

Dawson Letter of Apr. 7, 2004, Exh. J to Petitioner' Affirmation.

4

**DISCUSSION**

In accordance with the court's orders, the only issue that has been briefed at this time by the parties is the question of whether the petition is timely under AEDPA. It is undisputed that petitioner's conviction became final on May 23, 2001. *See Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir.) ("the limitations period for state prisoners therefore begins to run only after the denial of certiorari or the expiration of time for seeking certiorari"), *cert. denied*, 534 U.S. 924 (2001). Thus, petitioner's time to file his habeas corpus petition expired on May 23, 2002, one year after his conviction became final. *See* 28 U.S.C. § 2244(d)(1). Petitioner does not dispute that he failed to file his petition by this date, but argues principally that his attorney's incompetence in not filing his requested petition is sufficient grounds for equitable tolling. He asks the court to consider also his low level of education, his lack of financial resources, and his lack of expertise with regard to the law.

**I.     Equitable Tolling Standard**

"To equitably toll the one-year limitations period, a petitioner must show that extraordinary circumstances prevented him from filing his petition on time, and he must have acted with reasonable diligence throughout the period he seeks to toll." *Baldayaque v. United States*, 338 F.3d 145, 150 (2d Cir. 2003). Petitioner can make the requisite showing of extraordinary circumstances only if he can "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *See id.*

## II. Petitioner's Attorney's Incompetence

Our Court of Appeals has indicated that, generally, "attorney error [is] inadequate to create the 'extraordinary' circumstances equitable tolling requires." *See Smalldone v. Senkowski*, 273 F.3d 133, 138-139 (2d Cir. 2001) ("attorney's mistaken belief that the tolling period reset after each state collateral appeal does not constitute the 'extraordinary' circumstances warranting equitable tolling."). However, the Second Circuit has also stated that *Smalldone*'s holding does not "bar the application of equitable tolling to any case in which the cause of the petition being untimely was the malfeasance of the petitioner's attorney." *See Baldayaque,* 338 F.3d at 151 (while "attorney error normally will not constitute the extraordinary circumstances required to toll the AEDPA limitations period… at some point, an attorney's behavior may be so outrageous or so incompetent as to render it extraordinary). In *Baldayaque*, the court determined that this "extraordinary point" was reached where the attorney did no research on the petitioner's case and failed to file a petition in spite of petitioner's specific request.

Here, if one accepts that all of the petitioner's submissions are authentic, the record seems to reflect the type of shocking attorney incompetence the *Baldayaque* court indicated was sufficient to satisfy the "extraordinary circumstances" prong of the equitable tolling test. Petitioner's attorney failed to respond to numerous letters over a period of years and, when he did respond, failed to assist the petitioner with the filing of his habeas corpus petition without explanation.

However, even accepting that petitioner has made a sufficient demonstration of extraordinary circumstances, he ultimately fails to meet the second prong of the test, which requires the petitioner to demonstrate that he acted with reasonable diligence. *See id*. at 153. The Second Circuit has indicated that in assessing this question, "the district court should ask: did the petitioner act as

6

diligently as reasonably could have been expected *under the circumstances*?" *Id.* (emphasis in original). In *Baldayaque*, the circumstances included "[the attorney's] assurances to Rivera and Marquez that everything had been done that could be done" and "Baldayaque's lack of education and inability to speak or write English."[2] *See id.* These circumstances are not present in this case. Petitioner's letters evince his clear understanding of the English language and a sophisticated understanding of the AEDPA statute of limitations scheme. In his letter, petitioner counts down to the approaching AEDPA deadline as he complains that he is receiving no response from his attorney, and then continues to mark the time that has elapsed in subsequent letters. Were it only a matter of months that petitioner delayed between the point at which he should have realized that his attorney was not performing as he requested and the point at which he filed his petition, it might be possible to label his actions reasonable diligence. But rather, it was a period of four *years*. Petitioner has simply failed to explain what caused him to continue to rely on his lawyer rather than filing his petition. Nearly two years elapsed between petition's conviction becoming final and his finally writing an informal letter to the Clerk of Court requesting additional time, in spite of petitioner's understanding of the one-year statute of limitations. Even after this point, at which petitioner made clear in his letter that he realized he had been abandoned by his attorney, he still failed to file his petition for an additional two years. The excuse offered by petitioner, that there were certain unnamed documents in his attorney's possession that he needed in order to file his petition, is unavailing. A reasonably diligent petitioner would have filed the petition far earlier, with or without the documents, and informed the court of the attorney's actions frustrating the filing of

---

[2] The *Baldayaque* court did not find that the petitioner had met his burden of demonstrating reasonable diligence but rather remanded to the district court for an investigation of whether the petitioner had made such a demonstration and identified factors to be considered in that case.

the petition. Petitioner's failure to do so is fatal to his attempt to demonstrate reasonable diligence. The court therefore declines to apply equitable tolling, and the petition is dismissed as time-barred.

The Clerk of Court is directed to close this case. Since petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability is denied pursuant to 28 U.S.C. § 2253(c).

**SO ORDERED.**

_____/s/_____
**NINA GERSHON**
**United States District Judge**

**Dated:   December 20, 2005**
**          Brooklyn, New York**